**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **DANIEL EVANS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**RAPHAEL STONE COLLECTION, INC.,**<br>**Defendant.** | ) | **Civ. No. 26-cv-40064-MRG** |

**ORDER ON MOTION TO DISMISS [ECF NO. 6]**

**GUZMAN, J.**

In the case at hand, Plaintiff Daniel Evans alleges that his former employer, Raphael Stone Collection, Inc. ("Raphael Stone"), issued a fraudulent tax form on his behalf in 2025 which withheld Massachusetts state income tax and Paid Family and Medical Leave ("PFML") contributions, despite not being registered to conduct business in Massachusetts. The present motion before the Court is Raphael Stone's motion to dismiss Evans' complaint pursuant to both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [See ECF No. 6]. For the foregoing reasons, the Court **GRANTS** the motion to dismiss.

## I. BACKGROUND[1]

The foundation is as follows. Raphael Stone is a New Jersey corporation with offices across the United States, including in Worcester, Massachusetts. [Compl., ECF No. 1 ¶¶ 1, 6]. Daniel Evans delivered stone countertops for Raphael Stone over a period of years until August 1, 2025.

[1] At the motion to dismiss stage, the Court "accept[s] the factual allegations set forth in the amended complaint and disregard[s] any conclusory allegations." N. End Chamber of Com., Inc. v. City of Boston, 184 F.4th 1, 10 (1st Cir. 2026) (citation omitted).

[Id. ¶¶ 9–10]. After Evans departed from Raphael Stone, he filed a small claims action against his former employer based on alleged Wage Act violations on November 12, 2025. [Id. ¶ 10]. Prior to the Wage Act action, MGBDM, LLC, a company "managed by" Evans, filed an action against Raphael Stone to seek "damages of unpaid commissions." [Id. ¶ 11]. In the action initiated by the LLC, Evans' counsel attempted to serve Raphael Stone but hit a snag when a representative from the Massachusetts Secretary of State notified Evans that service on Raphael Stone could not be perfected by mail in New Jersey because Raphael Stone "had an agent for service of process domiciled in Massachusetts." [Id. ¶¶ 11–12]. Thereafter, Evans uncovered a new corporate filing by an entity named Raphael Stone Boston Inc. headquartered in Worcester "with overlapping natural person principals" as the New Jersey corporation. [Id. ¶ 13]. Raphael Stone Boston Inc. was incorporated on December 31, 2025 "after any business could have been conducted at that location for the year." [Id.] Additionally, Evans alleges the Massachusetts corporation was created during the pendency of his small claims actions. [Id. ¶ 16].

Raphael Stone issued a W-2 to Evans which, in addition to reporting wages in the amount of $24,000, listed withholdings of $1,108.20 in Massachusetts state income tax and $110.40 for Massachusetts PFML. [Id. ¶ 14; ECF No. 1-3 at 12].[2] On the W-2, the amounts were withheld by Raphael Stone, the New Jersey corporation. [Compl. ¶ 14]. Evans alleges that Raphael Stone "purportedly withheld those monies to remit them properly," but that no evidence indicates that Raphael Stone was registered to do business in Massachusetts during the period of Evans' employment with Raphael Stone in 2025. [Id. ¶ 15].

Evans initiated this eight-count action alleging violations of 26 U.S.C. § 7434 and various state-law claims. [Id. ¶¶ 18–25]. He seeks statutory and compensatory damages totaling $6,218.60,

[2] All page numbers refer to ECF pagination.

punitive damages, attorney's fees and an equitable accounting during the period of his employment. [Id. at 9–11]. Raphael Stone subsequently moved to dismiss the action, arguing its deficiency under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to which Evans filed an opposition. [ECF Nos. 6, 7]. Primarily, Raphael Stone contests that Evans has established the existence of Article III standing, which the Court will address first.

## II. LEGAL STANDARDS

It is procedurally etched in stone that district courts must address 12(b)(1) arguments before chiseling into any 12(b)(6) analysis. See Ne. Erectors Ass'n of BTEA v. Sec'y of Lab., Occupational Safety & Health Admin., 62 F.3d 37, 39 (1st Cir. 1995); see also Whaleco Inc. v. Gluck, No. 25-1893, 2026 WL 3334309, at *4 (1st Cir. Oct. 19, 2026) (holding that "a court has no power (as in *none*) to issue a merits ruling without ensuring the presence of both 'subject-matter' and 'personal jurisdiction'" (quoting Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430–31 (2007))).

Federal courts are courts of limited jurisdiction. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). Accordingly, a party seeking to invoke the federal court's jurisdiction bears the burden of establishing that jurisdiction is proper. Woo v. Spackman, 988 F.3d 47, 53 (1st Cir. 2021) (citing Kokkonen, 511 U.S. at 377). Article III of the Constitution limits the Court's jurisdiction to actual cases and controversies. Kerin v. Titeflex Corp., 770 F.3d 978, 981 (1st Cir. 2014). To establish the case or controversy requirement, "plaintiffs must establish that they have standing to sue." Id. (quoting Blum v. Holder, 744 F.3d 790, 795 (1st Cir. 2014)). And the inquiry of whether a plaintiff has Article III standing is a threshold jurisdictional issue. P.R. Tel. Co. v. T-Mobile P.R. LLC, 678 F.3d 49, 57 (1st Cir. 2012). In assessing standing, the Court will accept the

complaint's well-pleaded facts as true and draw all reasonable inferences from the complaint in Evans' favor. See Kerin, 770 F.3d at 981.

To establish Article III standing, Evans must meet a three-part test. Evans must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." Wiener v. MIB Grp., 86 F.4th 76, 84 (1st Cir. 2023) (quoting TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021)). Of particular importance to the Court's analysis in this case is whether Evans suffered an injury, because if he does not sufficiently allege "to have suffered an injury that [Raphael Stone] caused and the court can remedy, there is no case or controversy for the federal court to resolve." TransUnion, 594 U.S. at 423 (quoting Casillas v. Madison Ave. Assocs., Inc., 926 F.3d 329, 333 (7th Cir. 2019)).

Because the Court is considering a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice" because the Court "presumes that general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992) (citation modified) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990)). But to establish injury-in-fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016) (quoting Lujan v. Defs. of Wildlife, 504 U.S. at 560). While certain intangible harms may rise to the level of concrete injuries, the mere violation of a statute does not automatically confer an injury-in-fact or create an independent right to sue. Id. at 340–41. "Article III standing requires a concrete injury even in the context of a statutory violation" because the existence of a statutory right "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement[.]" Id. at

341. However, the absence of economic injury does not immediately foreclose a plaintiff from establishing an injury-in-fact, because "wrongfully retained and misused" assets could "constitute a tangible harm even if no economic loss results." Merrimon v. Unum Life Ins. Co. of Am., 758 F.3d 46, 53 (1st Cir. 2014).

## III. DISCUSSION

### A. Standing

Raphael Stone contends that Evans fails to allege injury-in-fact because his complaint alleges only "conjectural uncertainty about potential future tax consequences." [ECF No. 6 at 3]. Evans alleges two theories of injury: (1) that "receipt of a false W-2 is a concrete informational and financial injury causing immediate diminishment of wages and corrupting tax records," and (2) that deliberately false or misleading numerical data on an information form can be treated as false information constituting fraud or misrepresentation. [ECF No. 7 at 1–3]. Under the first theory, Raphael Stone argues that Evans has failed to allege any concrete injury or dispute. Specifically, it claims Evans does not allege that he even filed a 2025 tax return, received a tax assessment, or that his W-2 forms contained actual inaccuracies. [ECF No. 6 at 3]. Furthermore, Raphael Stone argues the complaint lacks any allegations that Evans was denied or lost PFML benefits, underwent an audit, or incurred any out-of-pocket personal expenses. [Id.]

Evans brings this action primarily under 26 U.S.C. § 7434, claiming that Raphael Stone filed a false information return that withheld $1,108.20 in Massachusetts state income tax and $110.40 in PFML. [Compl. ¶¶ 7, 14]. Evans premises this claim almost entirely on Raphael Stone's lack of corporate or tax registration with the Commonwealth during the relevant period, which in his view, supports an inference that the filing was fraudulent. [Id. ¶¶ 15, 18]. He alleges that, in relying on Raphael Stone's fraudulent W-2 filing for his own taxes, it will be "impossible to

determine" whether his "financial records are accurate with respect to his tax liability and the potential damages from any tax consequences from false reporting." [Id. ¶ 19].[3] While the complaint seeks compensatory damages of $1,218.60, it is devoid of any allegations establishing a cognizable loss. [Id. at 11]. Once again, Evans fails to allege—as Raphael Stone correctly challenges—that he even filed a 2025 tax return, that he faces an audit or regulatory penalties, that he was denied PFML benefits, or that he sustained any out-of-pocket expenses. [ECF No. 6 at 3]. Instead, the complaint leaves the Court to assume what *may potentially* happen in the future. Such a hypothetical injury requires the Court to leap across stepping-stones that are anything but concrete. Absent a showing of any tangible harm or imminent economic loss, Evans cannot establish a cognizable injury-in-fact. See Spokeo, 578 U.S. at 339.

Furthermore, First Circuit precedent bars this claim because "state and federal statutes make clear that wages withheld for taxes belong to the government and not to employees." Plazzi v. FedEx Ground Package Sys., Inc., 52 F.4th 1, 5 (1st Cir. 2022). This principle is explicitly codified by Mass. Gen. Laws ch. 62B, § 10, which tracks federal shielding laws to provide that an employer "shall be liable for the payment of the tax . . . and shall not be liable . . . to any person for the amount of any such payment." See also 26 U.S.C. § 3403 (federal tax liability shield). In Plazzi, certain delivery drivers working for a service provider for FedEx alleged that amounts were withheld from their weekly pay and were never sent to tax authorities. Id. at 3. The First Circuit determined that plaintiffs lacked Article III standing because first, wages withheld for tax purposes are held "in trust" for the government rather than property of the employees. Id. at 5. More, plaintiffs in Plazzi advanced similarly defective arguments as Evans submits here: that "they have

[3] Paragraph 19 of the complaint comprises Evans' cause of action for fraudulent misrepresentation, but the Court will consider the allegations in that paragraph toward Evans' alleged injury.

not alleged that this omission hampered their ability to file tax returns, reduced the amount of any tax refund they received, or caused any other concrete injury." Id. at 7. So too here. As in that case, Evans fails to allege any injury-in-fact to establish the existence of Article III standing.

Because Evans fails to plead any actual, concrete injury resulting from the information return, he lacks Article III standing to bring a claim under 26 U.S.C. § 7434. Furthermore, because statutory shielding laws vest ownership of withheld tax and PFML funds exclusively in the government, Evans has no legal interest in these sums as a matter of law. Accordingly, because Evans cannot establish an injury-in-fact or a cognizable cause of action, the Court **GRANTS** the motion to dismiss as to Count I.

### B. Supplemental Jurisdiction Over Counts II-VIII

Because the Court dismisses Evans' sole federal claim, it declines to exercise supplemental jurisdiction over the remaining state-law claims (Counts II–VIII). Federal courts typically avoid unnecessary rulings on state law "as a matter of comity and to promote justice between the parties." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). This is particularly so when all federal claims are eliminated before trial. Id.; see also Ryan v. UMass Mem'l Health, 728 F. Supp. 3d 215, 221 (D. Mass. 2024) (collecting cases).

Accordingly, the Court **DISMISSES** Counts II–VIII without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Raphel Stone's motion to dismiss [ECF No. 6] as to Count I under Fed. R. Civ. P. 12(b)(1) and declines to exercise supplemental jurisdiction as to Evans' remaining state law claims.

**SO ORDERED.**

Dated: November 9, 2026

/s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge